UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11226-RGS

SECURITIES AND EXCHANGE COMMISSION

v.

CHERYL L. JONES

MEMORANDUM AND ORDER ON
MOTION TO DISMISS BY DEFENDANT
CHERYL L. JONES

January 5, 2018

STEARNS, D.J.

The Securities and Exchange Commission (SEC) alleges that defendant Cheryl Jones was a "necessary and substantial" participant in a Ponzi scheme orchestrated by her brother, Mark Jones. According to the Complaint, Cheryl Jones (hereafter Jones) sold unregistered (and worthless) securities in violation of Sections 5(a) and 5(c) of the Securities Act of 1933. Jones filed a motion to dismiss, asserting, among other defenses, that the SEC's claims are time-barred under the five-year statute of limitations that applies to actions for civil penalties brought under Section 5 of the Act.[1] The court, by way of a September 20, 2017 order, authorized limited discovery on Jones's

---

[1] The motion also sought dismissal on Rule 12(b)(6) failure-to-state-a-claim grounds, and raised a suggestion of improper venue.

statute of limitations defense (including her deposition), and permitted each side to supplement the briefing. Because there is no record support for the allegation that Jones sold or offered to sell unregistered securities during the limitations period (or was during that time a necessary and substantial participant in the sale or offer of sale of the securities at issue), the court will grant summary judgment to Jones pursuant to Fed. R. Civ. P. 56.

BACKGROUND

Jones is a resident of Washington, DC, where she works as a licensed real estate agent. Her brother, Mark Jones, was the subject of civil and criminal penalties arising out of an investment fund (the Bridge Fund) that he created and managed between 2007 and 2015. The Bridge Fund promised investors that their money would be used to extend short-term "bridge loans" to Jamaican companies that had been approved for commercial bank loans but were in need of interim financing until the loans closed. In truth, Mark Jones (in classic Ponzi fashion) siphoned off some of the funds for his personal use while using the rest to pay off investors whose suspicions were or might be aroused. When the music came to a grinding halt, Mark Jones fessed up and pled guilty. He was sentenced to seventy months' imprisonment, and eventually incurred a default judgment in a parallel civil

case, which called for a disgorgement in the amount of $3,822,973.48, and payment of a civil penalty of $160,000.

The SEC then turned its sights on Cheryl Jones, whose good fortune it had been to be one of the early investors in the Bridge Fund. Jones allegedly recruited new investors to the scheme in exchange for which she received commissions and a monthly retainer from her brother.[2] The SEC brought this securities fraud lawsuit against Jones on July 3, 2017.[3] In the Complaint, the SEC seeks disgorgement of the moneys Jones is said to have reaped from the hustle, as well as a permanent injunction restraining her from further violations of Section 5.

This court, noting that under 28 U.S.C. § 2462, claims for disgorgement and civil penalties "shall not be entertained unless commenced within five years from the date when the claim first accrued," ordered

---

[2] Although not developed as a serious argument, in her Memorandum in Support of her Motion to Dismiss, Jones contends that she was one of the victims of her brother's scam, and that "[l]ike other investors in the Bridge Fund, Ms. Jones suffered significant losses representing almost all of her life savings." Dkt # 7, at 1. Because the underlying claims are time-barred, I need not explore the truth of this contention.

[3] As part of the scheme, Mark Jones issued personal promissory notes and "personal guarantees" to his investors. Compl. ¶ 11. These promissory notes, which were not registered with the SEC, comprise the "securities" at issue. Compl. ¶ 27.

discovery on the timeliness of the SEC's claims, limited to the exchange of interrogatories, requests for documents, and Jones' deposition, and further confined to potentially pertinent conduct occurring during the limitations period – that is, from July 3, 2012, to July 3, 2017.[4]  *See* Order of September 20, 2017, Dkt # 16.  Discovery has now closed, and the parties have filed additional briefs, with Jones renewing her Motion to Dismiss and the SEC filing a Supplemental Opposition.  *See* Dkt #s 17 and 18.

## DISCUSSION

As a rule, when evaluating a motion to dismiss at the pleading stage, the court follows a familiar path and "accept[s] as true all well-pleaded facts set out in the complaint and indulge[s] all reasonable inferences in favor of the pleader."  *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). "Factual allegations must be enough to raise a right to relief above the speculative level," and a mere "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, in this case, the court permitted discovery and the introduction of documents outside the pleadings for the narrow purpose of determining

---

[4] The relevant date for determining when a cause of action accrues, and thus when the five-year clock begins to tick, is the date on which the fraud, if any, occurred, and not the date on which it was discovered by the SEC.  *See Gabelli v. SEC*, 568 U.S. 442 (2013).

4

whether the SEC's Complaint was timely. While as an apothegmatical matter, "Fed. R. Civ. P. 12(b) has been interpreted to require the district court to expressly notify the parties of its intention to convert" a motion to dismiss to a motion for summary judgment, *E.E.O.C. v. Green*, 76 F.3d 19, 24 (1st Cir. 1996), the First Circuit "does not mechanically enforce" the notice requirement. *Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 332 (1st Cir. 1992).

Indeed, a formal notice may be supererogatory, and the failure to provide it harmless, "when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy," *id.* (internal quotation marks and citation omitted). So it is here. This is not a circumstance where "discovery has barely begun and the nonmovant has had no reasonable opportunity to obtain and submit additional evidentiary materials to counter the movant's" showing. *Whiting v. Maiolini,* 921 F.2d 5, 7 (1st Cir. 1990). Rather, the parties were expressly informed that the court viewed the statute of limitations as potentially dispositive, were permitted to take discovery on that issue, and were allowed to submit the fruits of that discovery for the court's consideration. The court will therefore treat Jones's motion as one for summary judgment, and will grant relief "if [she] shows that there is no

genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To make out a *prima facie* case for a violation of Section 5, the SEC must show that: (1) no registration statement was in effect for the securities in question at the time they were sold; (2) the defendant directly or indirectly sold or offered to sell the securities; and (3) the sale or offer of sale was made through interstate commerce.[5] *See SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). Courts interpreting the "sale" element have concluded that it may be satisfied by a showing that a defendant was a "necessary participant" or a "substantial factor" in the unregistered sale or offer of sale. *See Zacharias v. SEC*, 569 F.3d 458, 464 (D.C. Cir. 2009) (applying "substantial factor" test); *see also SEC v. Holschuh*, 694 F.2d 130, 140 (7th Cir. 1982) ("[T]he relevant inquiry in an enforcement action is whether the evidence shows that the defendant was a substantial and necessary participant in the sales transactions."); *cf. SEC v. Saxena*, 26 Fed. App'x 22, 23 (1st Cir. 2001) (per curiam) (noting that defendant had violated

---

[5] Scienter is not a required element for civil liability under Section 5, and a defendant may be found liable "regardless . . . of any degree of fault, negligent or intentional, on the seller's part." *SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004).

Sections 5(a) and 5(c) by "participating in the offer or sale of unregistered securities in interstate commerce or through the mails.").

The SEC relies on four items of evidence in an attempt to meet its burden of establishing that Jones "directly or indirectly offered to sell or sold the securities," *SEC v. Esposito*, 260 F. Supp. 3d 79, 88 (D. Mass. 2017) (citing *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901-902 (5th Cir. 1980), after July 3, 2012. Specifically:

> (1) Mark Jones paid the Defendant a 10% commission on securities purchased by eight investors to whom she had introduced him; (2) the Defendant communicated from time to time (in some cases, frequently) with five of the eight investors; (3) the Defendant spoke with Mark Jones about how to address the investors' concerns because, as she put it on one occasion, she was "making sure we're on the same page!!"; and (4) three of the investors with whom the Defendant was in contact purchased more than $540,000 of additional securities from Mark Jones.

Pl's Supp. Opp'n to Def's Motion to Dismiss, Dkt # 17, at 8. Ensemble, the SEC argues, "[t]his evidence supports a reasonable inference that the three investors would not have purchased the additional securities but for the Defendant's efforts to maintain the relationship and address their concerns," and that this inference in turn "supports a finding that the Defendant was a necessary participant and a substantial factor" in her brother's scheme. *Id.*

This is pretty thin gruel. As to the receipt of commissions, there is no record evidence tying the money that Jones received from her brother to

7

investors or investments that she recruited or solicited after the limitations period had run (as opposed to those that she recruited or solicited prior to July 3, 2012). While Jones readily admits to having introduced some of her friends to her brother in 2008 and 2009,[6] and to having received commissions as a result of their investments in the Bridge Fund, there is no evidence that she introduced any new investors to the Fund after July 3, 2012.[7]

The SEC next argues that Jones was an essential presence in allaying and deflecting investor concerns; that she served as an early warning system for her brother when an investor she had recruited became overly suspicious; and that but for her involvement, these investors would not have made additional contributions to the Fund during the limitations period or would have sought to redeem their investments. The SEC points to a February 4, 2013, email in which – after Mark Jones had apparently failed to send periodic account statements to investors – Jones encouraged him to "reinstate that practice to keep people calm!" Compl. ¶ 19. Jones also

---

[6] In her deposition, Jones testified that she had not spoken to any of these friends about making additional investments in the Bridge Fund after they initially invested in 2008 and 2009.

[7] The passive receipt of commission payments from her brother is, by itself, insufficient as a matter of law to support an inference that Jones was "a necessary or substantial participant" in the ongoing scheme.

testified at her deposition that she had spoken with two investors about a concern that they had raised over whether her brother should obtain a life insurance policy to protect their investments in the event anything untoward should happen to him. *See* Dkt #17, Ex. 1, pp. 26, 33, 37, 41-47. On May 7, 2013, Jones wrote to her brother that she would be socializing with an investor that evening and asked what he had previously told this person about the status of the Fund in an effort to "mak[e] sure we're on the same page!!" *Id.*

The Complaint also alleges that Jones met with an investor in March of 2014 to pass on information about the Bridge Fund provided by her brother. Compl. ¶ 18. Further, in an email to an investor dated March 16, 2014, discussing the mechanics of investing in the Bridge Fund, Mark Jones informed the investor that "I gave Cher[yl] the web-site reference and I think you and she are going to be together this evening, in which case I am sure she will share it with you." Compl. ¶ 18.

Collectively, even when viewed in the light most favorable to the SEC as the nonmoving party, these items do not take the Complaint over the *de minimis* threshold. Simply passing on the name of a website or relaying investor concern about missing account statements or the perceived need for a life insurance policy to her brother hardly suffice make out Jones as a

"substantial" or "necessary" participant in the scheme *after July 3, 2012*. In fact, the allegations fail to meet even the more lenient standard of but-for causation, about which courts have expressed skepticism, given the broad scope of potentially innocuous conduct that a but-for standard might sweep up and subject to Section 5's strict liability regime. *See SEC v. Murphy*, 626 F.2d 633, 650 (9th Cir. 1980) ("Prior to the issuance of a security, numerous persons perform mechanical acts without which there could be no sale. For example, a printer may prepare key documents or a bank may advance cash to a customer upon the customer's presentation of an instrument and then pass the instrument to another person. Both would satisfy a 'but for' causation test, but these acts nonetheless do not render the defendants sellers.").

In this case, far from being a but-for cause of the decision of investors she had recruited in 2008 and 2009 to make additional purchases in the Fund during the limitations period, much less satisfying the higher standard of being a substantial factor or necessary participant in the scheme, the evidence unearthed during discovery shows Jones' involvement as falling squarely within the Ninth Circuit's holding in *CMKM Diamonds*, 729 F.3d at 1257: "Because Section 5 imposes strict liability for violations of its registration requirement, we recognize that it is particularly important that

the necessary participant and substantial factor test be carefully applied to each case so as not to subject defendants with a *de minimis* or insubstantial role in a securities scheme to strict liability." *Cf. SEC v. Phan*, 500 F.3d 895, 906 (9th Cir. 2007) (concluding that defendant was both a "necessary participant" and a "substantial factor" in the transactions because he "chose the date" for the sales, "provided" the buyer, "directed [a] lawyer to draft a stock sale contract," and directed where the proceeds be sent); *Saxena*, 26 Fed. App'x at 23 (finding that defendant was a "participant" for Section 5 liability because he "provided free advertising" for the unregistered securities and provided the investment fund in question with "free access to his investment newsletter subscriber lists for use in promoting the [unregistered] funds").

Because the court finds that the Section 5 claims are time-barred, it will grant summary judgment to Jones on those claims.

The SEC argues that, notwithstanding any time-bar with respect to Section 5, its request for equitable relief against Jones is not subject to any limitations period. While this is true, in a practical sense there is nothing remaining to be enjoined. Mark Jones is in prison, the Bridge Fund is defunct, and even if Cheryl Jones were so inclined, she has no securities left to sell. The court is hard pressed to imagine injunctive language that would

11

apply to Jones with the specificity required to satisfy Fed. R. Civ. P. 65(d)'s mandate that the court "describe in reasonable detail the acts restrained or required."

An injunction, in other words, would simply admonish Jones to obey the federal securities laws in any future venturing on her part into what for her will likely prove perilous territory. While "such 'obey-the-law' injunctions may or may not be enforceable depending on the specific circumstances," *Merriam v. Demoulas*, 2013 WL 2422789, at *10 (D. Mass. June 3, 2013), in this particular case, the court is of the view that the SEC's requested injunctive relief would not defensibly comport with Rule 65.

ORDER

For the foregoing reasons, the Motion to Dismiss is <u>ALLOWED</u> as to the SEC's prayer for injunctive relief. The court will <u>GRANT</u> summary judgment to Jones on the Section 5 claims for disgorgement and civil penalties. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE